2008-NMCA-106

190 P.3d 350

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Derrick JOHNSON, Defendant–Appellee.**

No. 26,878.

Court of Appeals of New Mexico.

June 18, 2008.

Certiorari Granted, No. 31,215, Aug. 6, 2008.

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

KENNEDY, Judge.

{1} The State appeals a district court order dismissing charges against Defendant Derrick Johnson. Defendant was charged with three counts of battery upon a school employee, contrary to NMSA 1978, § 30–3–9(E) (1989). The district court found that the three victims were not school employees as contemplated by Section 30–3–9. The State argues that the three victims were school employees and asks this Court to reverse the district court. We agree with the district court that the security guards in this case were not school employees and affirm the dismissal of the charges against Defendant.

## FACTS AND PROCEDURAL HISTORY

{2} Defendant and his cousin, Kevin Barney, went to Gallup High School during regular school hours, although neither was a student there. Officer Padilla of the police department in Gallup informed Defendant and Barney that they needed hall passes to be in the school. Barney became verbally abusive toward Officer Padilla. Two security guards at the school, Silversmith and King, escorted Barney and Defendant to the counseling office. King then escorted Defendant to his car to retrieve a book. During that time, Barney attacked Silversmith, and Silversmith called for assistance. King and Defendant returned to the scene, and security guards Moeckel and Cachini also responded.

{3} As the security guards were trying to restrain Barney, Defendant attempted to intervene. During the fracas, Defendant struck Moeckel, Cachini and King and was stopped when Officer Padilla sprayed him with mace. All three victims suffered head or facial injuries from Defendant's blows. Defendant was charged with three counts of battery upon school employees as a result of the fight.

{4} Defendant filed a motion to dismiss on the grounds that the three victims were not school employees under the statute but were employees of Gallup Security Services (GSS), an independent contractor of the Gallup school district. The district court dismissed the charges against Defendant after an evidentiary hearing.

## DISCUSSION

{5} "Battery upon a school employee is the unlawful, intentional touching or application of force to the person of a school employee while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30–3–9(E). In this case of first impression, we decide the narrow issue of whether a contracted security guard is considered a "school employee" under Section 30–3–9. This is a question of statutory interpretation, which we review de novo. *State v. Padilla*, 2008–NMSC–006, ¶ 7, 143 N.M. 310, 176 P.3d 299; *State v. Wasson*, 1998–NMCA–087, ¶ 6, 125 N.M. 656, 964 P.2d 820.

{6} The State argues that school guards should be considered school employees under Section 30–3–9 because the statute defines a school employee as including "a member of the local public school board and public school administrators, teachers and other employees of that board." Section 30–3–9(A)(2). The State focuses its argument on the general language of the statute identifying school employees as "other employees of [the local public school] board."

{7} The State's argument asks us to assume that "other employees of that board" includes any person that has a contract with the school to provide services. While it is clear that the Legislature's definition of "school employee" intends to encompass more than just teachers and administrators, it is equally clear that including the language "other employees of that board" does not encompass every individual that provides services to the school. The statute specifically references the "board." We interpret the statute to include not only members of the local public school board but any employees of that school board as well.

■ {8} Although the State makes persuasive public policy arguments as to why the school security guards in this instance should be considered school employees under the statute, our job is to give the words of the statute their ordinary meaning. *State v. Pearson*, 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980.

■ {9} Our analysis is informed by the undisputed relationship between the school board and the school security guards. "In determining whether an employer-employee relationship exists, ... the primary test is whether the employer has the right to control the details of the work to be performed." *Savinsky v. Bromley Group, Ltd.*, 106 N.M. 175, 176, 740 P.2d 1159, 1160 (Ct.App.1987). We also look to evidence of the right to control employees in the performance of their duties and how the employees are compensated, how equipment is furnished, and which party has the right to end the relationship. *Id.; Blea v. Fields*, 2005–NMSC–029, ¶ 12, 138 N.M. 348, 120 P.3d 430. Our Supreme Court broadened this list to include:

(1) the type of occupation involved and whether it is generally performed without supervision; (2) the skill required for the job; (3) whether the employer furnishes the tools or instrumentalities for the job; ■ how long the individual has been employed; (5) whether the work is part of the employer's regular business; and (6) whether the employer is engaged in business activities.

*Blea*, 2005–NMSC–029, ¶ 12, 138 N.M. 348, 120 P.3d 430.

{10} The school board contracted with GSS to provide school security guards at various locations, including Gallup–McKinley High School (GMHS). The contract provides as follows: the principal of the school would determine the work hours of the guards, the guards were also required to work at after-school events, and the guards were to meet weekly with the school administrator to discuss ongoing or upcoming issues. Although the school administrator could not fire guards, the administrator could ask that they be reassigned, and pursuant to the school district policy the guards were not to carry firearms. The contract required GSS to carry workers' compensation insurance and liability insurance for its employees and its vehicles. The guards remained on GSS's payroll and were not covered by the Educational Retirement Act as are employees of the school district. The guards did not work solely at GMHS, but could work at any of the approximately fifteen businesses in the Gallup area to which GSS provided services, especially in the summer when school was out.

{11} The State rests its argument on the amount of control the principal of GMHS exercised over the guards. The State argues that because the school district set the hours worked by the guards, supervised them on a daily basis, and required the guards to adhere to the policies and procedures of the school district, it can be concluded that the guards were employees of the school district. We do not find that the amount of control exercised outweighs the other undisputed facts concerning the contract between GSS and GMHS such that the control transforms the guards into school employees. The reality is that GSS maintained conspicuous and superceding control over the guards, regardless of the work details that GMHS controlled. GSS retained the ability to hire, fire, and discipline guards. GSS was required to insure the guards and was the entity that paid the guards' salaries. Despite GMHS's exercising control over the guards to the extent of defining their duties at school, GSS employed them and assigned them to fulfill such duties at the Gallup schools or elsewhere, as required solely by GSS's needs. It is clear that the work provided by the guards is primarily the type of work GSS contracts to perform and not the type of work schools would consider their "regular business."

{12} The plain meaning of the statute, Section 30–3–9(A)(2), explicitly contemplates a school or board employee or member and does not include employees of business entities that contract with the board. The Legislature could have chosen to expand the definition of a school employee, but it did not. *See, e.g., James v. N.M. Human Servs. Dep't*, 106 N.M. 318, 320, 742 P.2d 530, 532 (Ct.App. 1987) ("[W]e will not rewrite or add words to a statute."). Because we must strictly con-

strue criminal statutes, we decline to extend the definition provided by the Legislature with regard to school employees. *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994).

{13} In *Ogden,* the question was whether a Community Safety Officer (CSO) employed by the Farmington Police Department was a "peace officer" whose murder would trigger the death penalty. The Farmington Police began the CSO program to lighten the duties of police officers by spinning off minor and less dangerous law enforcement tasks formerly performed by city police officers. *Id.* at 237, 880 P.2d at 848. The CSOs were directly employed by the police department and received their orders through the police chief. *Id.* at 237–38, 880 P.2d at 848–49. Though not allowed to arrest or carry guns, the Supreme Court concluded that the public had the impression by their uniforms, vehicles, and demeanor that the CSOs were qualified and fully trained police officers "with the attendant authority and duty to maintain public order," and thus, "based upon the CSOs' duties, authority, and appearance, CSOs [we]re 'peace officers' under the plain and ordinary meaning of the term." *Id.* at 238, 243–44, 880 P.2d at 849, 854–55.

{14} The dissent reasonably points out that GSS was contracted to provide its employees to perform work for Gallup Schools, which "employed" the services of GSS employees. That does not qualify employees of GSS as employees of the school board so as to aggravate a criminal conviction in that GSS controlled the assignments and placement of its employees. Strict construction of the statute, which is required of us, compels us to extend the aggravating circumstance to instances in which the victims are directly employed by schools. This leaves battery as perpetrated by the defendant in this case as a serious offense against any victim and the public order.

{15} The contracting of outside companies to provide services to schools in New Mexico is a widespread and long-standing practice known to the public and the Legislature. While facilitating the clear intent of the Legislature, we should not supply new applications that the Legislature has not enacted.

If the Legislature wishes to expand the definition of school employee from those employed by the board to those working in schools by virtue of contracts between schools and outside employers, it can do so.

{16} In looking at the totality of the circumstances presented, we hold that GSS employed the school security guards. GSS contracted with the school to provide the guards' services, but this did not transform the guards themselves into "school employees" or employees of the school board. The degrees of separation between the guards and the school board are at least one too many.

## CONCLUSION

{17} The district court did not err in dismissing the charges against Defendant. The school security guards are not "school employees" under Section 30–3–9; rather, they are employees of GSS. Therefore, Defendant could not be charged with battery upon a school employee.

{18} **IT IS SO ORDERED.**

I CONCUR: A. JOSEPH ALARID, Judge.

LYNN PICKARD, Judge (dissenting).

PICKARD, Judge (dissenting).

{19} I respectfully dissent from the majority opinion. Although the majority recognizes the State's "persuasive policy arguments," it rejects the State's conclusion that the guards are school employees covered by Section 30–3–9 on two primary grounds-the first based on the various technical, legal tests utilized in employment law and the second based on the notion that the Legislature could have been more explicit. In my view, neither of these grounds has merit.

{20} The State's policy arguments rely on the purpose of the enactment of Section 30–3–9, entitled "An Act Relating to Public School Violence …," 1989 N.M. Laws ch. 344, § 1, which is to lessen violence at schools by providing enhancement of penalties when the offense is committed against certain people, including "school employee[s]," who are further defined as "employees of [the school] board." In contrast to the majority's defining "employees" with refer-

ence to technical employment law, and thereby excluding GSS's guards from the statute's coverage, I would first utilize ordinary dictionary definitions in my search for plain meaning.

{21} According to *Webster's Third New International Dictionary* 743 (1966), an "employee" is "one employed by another." "Employ" in turn includes "to use or engage the services of." Under this definition, the guards could be considered to be employed by the board. And because so considering them would afford them the measure of protection that the Legislature obviously intended, I would hold that the dictionary definition is the appropriate one to use when considering whether a battery on GSS's guards should be covered by Section 30–3–9. *Cf. Ogden*, 118 N.M. at 242–46, 880 P.2d at 853–857 (holding that a community service officer is a peace officer for purposes of death penalty aggravating circumstances because "peace officer" is not specifically defined in the death penalty statute and that statute's purpose is to provide an additional measure of protection to people who enforce the law).

{22} The second rationale advanced by the majority is that the "Legislature could have chosen to expand the definition of school employee, but it did not." Majority opinion, ¶ 12. Yet, we must recognize that "[o]ur ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature. It is the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose." *State v. Smith*, 2004–NMSC–032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted). In construing statutes, we "will not construe a statute to defeat the intended purpose.... Rather, statutes are to be interpreted in order to facilitate their operation and the achievement of their goals. We also have the duty to recognize what is necessarily implicit in the statutory language." *Padilla v. Montano*, 116 N.M. 398, 403, 862 P.2d 1257, 1262 (Ct.App.1993) (citations omitted). Based on these authorities, the guards who are hired by the school to help maintain order, whether they are direct employees of the school or of a company that

contracts with the school, seem to be deserving of the protection afforded by Section 30–3–9. The fact that the guards are employed by GSS does not, to me, mean that they cannot also be school employees under Section 30–3–9.

{23} I would hold that the district court erred in dismissing the charges against Defendant.