# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-049

Filing Date: September 24, 2009

Docket No. 31,215

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

DERRICK JOHNSON,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Grant L. Foutz, District Judge

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Public Defender
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

**{1}** After allegedly striking three private security guards while visiting Gallup High School, Defendant Derrick Johnson was charged with three counts of battery on school personnel, contrary to NMSA 1978, Section 30-3-9(E) (1989), which prohibits battery upon "school employee[s]." The district court dismissed the charges, concluding that because the security guards were providing contractual services at the high school, they were not "school employees" as defined in Section 30-3-9(A)(2). The State appealed.

**{2}**     The sole issue we must decide in this case is whether the security guards may be considered "employees" of the school board for the purposes of Section 30-3-9.  The State argues that the security guards are "school employees" because the Legislature intended to reduce violence in schools by protecting any person hired by the board to provide services for the school.  Defendant argues that by using the term "employee," the Legislature did not intend to make battery upon independent contractors punishable by Section 30-3-9.  We hold that the term "school employee" in Section 30-3-9 includes security guards providing services for a school district pursuant to a contract with a school board.  Therefore, we reverse the dismissal of the charges against Defendant and remand this matter to the district court.

## I.     BACKGROUND

**{3}**     Since this matter is before us on review of Defendant's motion to dismiss, we briefly set forth the allegations in the State's criminal complaint.  *See State v. Powell*, 114 N.M. 395, 404, 839 P.2d 139, 148 (Ct. App. 1992) ("In considering a defense motion to dismiss [a complaint], the district court accepts as true the factual allegations set forth in the [complaint]." (modifications in original, internal quotation marks and citation omitted)).  In December 2005, Defendant and his cousin, Kevin Barney, visited Gallup High School.  Neither Defendant nor his cousin were students at that time; their purpose in visiting the school was to return some books.  Mr. Barney was involved in an altercation with a school security guard and Defendant intervened.  In the ensuing scuffle, Defendant allegedly struck three security guards, Dennis Moeckel, Delbert Cachini, and Edward King.  The State charged Defendant with three counts of battery upon school personnel.

**{4}**     Defendant moved to dismiss all three counts pursuant to Rule 5-601(B) NMRA on the grounds that the security guards were not "school employees" within the meaning of Section 30-3-9.  *See* Rule 5-601(B) ("Any defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion.").  The parties agreed that this issue would require the district court to take evidence to determine the nature of the guards' working relationship with the school.  However, they stipulated that the issue before the court in Defendant's motion to dismiss was a legal question that could be decided pre-trial under Rule 5-601(B).  The district court heard testimony and accepted written evidence regarding the nature of the security guards' working relationship with Gallup-McKinley County Board of Education and Gallup-McKinley High School.  In this case, the parties stipulated that the facts are not in dispute, and therefore the security guards' status as school employees is a question of law appropriate for disposition on a motion to dismiss.  *See State v. Smith*, 2009-NMCA-028, ¶ 7, 145 N.M. 757, 204 P.3d 1267 ("A defendant's pretrial motion to dismiss cannot contradict allegations of fact supported by probable cause; to do so would raise a factual issue for the jury to decide.").

**{5}**     Regarding the evidence submitted to determine whether the guards were "school employees" under Section 30-3-9, the record reflects the following undisputed facts. Gallup Security Service (GSS) is a sole proprietorship owned by Dennis Moeckel.  Pursuant to a

request for proposals issued by the Gallup-McKinley County Board of Education, GSS was selected by the board to provide contractual security services to the Gallup-McKinley County School District for the 2004-2005 school year. As part of this contract, GSS provided security services at Gallup-McKinley High School. As owner of GSS, Moeckle hired and paid security guards Cachini and King to work at Gallup-McKinley High School. Neither Cachini nor King were hired directly by the school board, nor were they paid directly by the board for their services pursuant to its contract with GSS. However, pursuant to the contract, the principal of Gallup-McKinley High School determined what hours GSS security guards should work and at what locations. The principal also could dictate that a particular security guard could not work at Gallup-McKinley High School. The contract between the board and GSS provided that the "[s]ite administrator has full direction over guards [sic] assignments including temporary assignments on other Gallup School Property sites."

**{6}**     The district court granted Defendant's motion to dismiss, concluding that Moeckle, Cachini and King "[were] not 'school employees' as defined by NMSA 1978, § 30-3-9(A)(2)[.]" The Court of Appeals affirmed in a split decision. *State v. Johnson*, 2008-NMCA-106, ¶ 1, 144 N.M. 629, 190 P.3d 350. To determine whether the security guards were "school employees" within the meaning of Section 30-3-9, the Court of Appeals majority stated that its task was to give the words of the statute their ordinary meaning. *Johnson*, 2008-NMCA-106, ¶ 8. It concluded that this determination "is informed by the undisputed relationship between the school board and the school security guards." *Id.* ¶ 9. Thus, the Court of Appeals' analysis was guided by cases that analyze whether an employer-employee relationship exists by determining whether the employer had the right to control the details of the work to be performed by the employee. *Id.*

**{7}**     The majority concluded that under these right to control tests, the security guards were not employees of Gallup-McKinley High School. *Id.* ¶ 11. It therefore determined that the plain meaning of the term "employee" as used in Section 30-3-9 "does not include employees of business entities that contract with the board." *Johnson*, 2008-NMCA-106, ¶ 12. Relying on *State v. Ogden*, 118 N.M. 234, 880 P.2d 845 (1994), the majority strictly construed the criminal statute and "decline[d] to extend the definition provided by the Legislature with regard to school employees." *Johnson*, 2008-NMCA-106, ¶ 12.

**{8}**     In her dissent, Judge Pickard took issue with the majority's reliance on "technical employment law" to define who qualified as "school employees" under the statute. *Id.* ¶ 20 (Pickard, J., dissenting). Rather than looking to the right to control tests, Judge Pickard explained that she would give the term "employee" its ordinary meaning and construe the statute to effectuate its purpose. *Id.* ¶¶ 21-22. Consequently, Judge Pickard concluded that "the guards who are hired by the school to help maintain order, whether they are direct employees of the school or of a company that contracts with the school, seem to be deserving of the protection afforded by Section 30-3-9." *Id.* ¶ 22. We granted certiorari to consider whether "employees" as defined in the battery on school personnel statute includes security guards providing services to the school under a contract with the school board. *State v.*

3

*Johnson*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

## II.    DISCUSSION

**{9}**    The issue of whether the security guards are "school employees" as defined in the battery upon school personnel statute is purely a legal question. *Cf. Ogden*, 118 N.M. at 239-40, 880 P.2d at 850-51 ("The issue of whether a Farmington [Community Services Officer] qualifies as a 'peace officer' under the aggravating circumstance statute is a purely legal question."). Therefore, as a matter of statutory construction, our review is de novo. *State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489.

**{10}**    "The principal command of statutory construction is that the court should determine and effectuate the intent of the legislature[.]" *Ogden*, 118 N.M. at 242, 880 P.2d at 853. The primary indicator of legislative intent is the plain language of the statute. *Id.* When a term is not defined in a statute, we must construe it, giving those words "their ordinary meaning absent clear and express legislative intention to the contrary." *Id.*

**{11}**    Section 30-3-9(E) makes unlawful any battery upon a "school employee." As used in that section, "'school employee' includes a member of a local public school board and public school administrators, teachers and other employees of that board." Section 30-3-9(A)(2). As the GSS security guards are not members of the school board, administrators, or teachers, we are only concerned with whether they are "other employees of [the] board." Unfortunately, the definition of "other employees of [the] board" is not defined in the statute, and thus we must look to other sources to determine the exact meaning of "school employee." We also observe that "school employee" is not defined elsewhere in the Criminal Code. *See* NMSA 1978, § 30-1-12 (1963) (definitions applicable in the Criminal Code). Finally, we note that nothing in the statute indicates the Legislature intended something other than the ordinary meaning of "employee" to apply. Therefore, we begin our analysis by determining the ordinary meaning of that term.

**{12}**    An "employee" is "[a] person who works for another in return for financial or other compensation." *The American Heritage Dictionary of the English Language* 428 (1973). An "employee" is also "one employed by another . . . usu[ally] for wages[.]" *Webster's Third New International Dictionary* 743 (1971). To "employ" means "to provide with a job that pays wages or a salary[,]" and, more generally, "to use or engage the services of[.]" *Id.* Under the ordinary meaning of the term, an "employee" is one who provides services to another in exchange for compensation. As used in Section 30-3-9, it includes those who have been hired directly by the school board in exchange for wages or a salary and, in some cases, those who provide services for the board in exchange for compensation, provided their services further the legislative purpose of this section. Thus, we must investigate whether the security guards contracted by the school board fall within this definition.

**{13}**    "A criminal statute must be interpreted in light of the harm or evil it seeks to prevent." *Ogden*, 118 N.M. at 244, 880 P.2d at 855. In *Ogden*, we were faced with the issue

4

of whether a community service officer (CSO) was a "peace officer" under the aggravating circumstance statute, NMSA 1978, Section 31-20A-5 (1981). *Ogden*, 118 N.M. at 237, 880 P.2d at 848. Observing that the aggravating circumstance statute did not define that term, we first defined "peace officer" according to its plain and ordinary meaning. *Id.* at 243-44, 880 P.2d at 854-55. We recognized, however, that "the language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention." *Id.* at 243, 880 P.2d at 854. Thus, when construing an undefined term in a criminal statute, the court should embrace the common sense meaning of the statutory language in light of the rule that "criminal statutes should be construed to further their purpose." *Id.* at 245, 880 P.2d at 856.

**{14}** In *Ogden*, we held that the purpose of the aggravating circumstance statute is "to deter the killing of law enforcement officers by enhancing the penalty for committing that crime." *Id.* at 244, 880 P.2d at 855. After broadly defining the popularly understood meaning of "peace officers" to include those "who keep[] the peace by patrolling public areas and enforcing the law[,]" we concluded that "[p]rotecting CSOs under the aggravating circumstance statute clearly furthers the purpose of the statute." *Id.* We adopt the same analytical approach here.

**{15}** The purpose of the battery upon school personnel statute is to decrease incidents of violence at schools by enhancing the penalties for crimes committed against "employees" of the school. The law enacting Section 30-3-9 was entitled "An Act Relating to Public School Violence and Vandalism[.]" 1989 N.M. Laws, ch. 344. Thus, one of the Legislature's explicit purposes was to reduce violence in schools. Indeed, the State Board of Education has recognized that school boards throughout New Mexico have the "authority and responsibility to provide a safe environment for student learning" in order to effectively educate New Mexico's children. 6.11.2.6 NMAC.

**{16}** We also look to related provisions of the Administrative Code to examine whether security guards are traditionally viewed as school employees. In the section of the Code that declares the rights and responsibilities of public schools and public school students, the State Board of Education defines "[s]chool personnel" as "all members of the staff, faculty and administration *employed by the local school board*[,] . . . includ[ing] school security officers[.]" 6.11.2.7(T) NMAC (emphasis added). Among the provisions of these regulations, a student may be appropriately disciplined for endangering the health or safety of "school personnel," meaning that if a student commits an act that endangers the health or safety of a security guard, that student may be disciplined. 6.11.2.10(C)(1) NMAC. We acknowledge that these regulations are not an interpretation of Section 30-3-9. However, they nonetheless demonstrate two important principles: (1) they support our conclusion that the ordinary meaning of "school employee" includes school security guards; and (2) they demonstrate that deterring assaults on security guards furthers the policy to provide a safe environment in which students can learn. It is to this policy, shared by Section 30-3-9, that we now turn.

5

**{17}** Our conclusion that the ordinary definition of "school employee" in Section 30-3-9 includes security guards who are providing services for the school promotes the State's articulated policy to make schools safe places for learning. Therefore, "using two important rules of construing criminal statutes, the plain meaning rule and the rule that criminal statutes should be construed to further their purpose," *Ogden*, 118 N.M. at 244-45, 880 P.2d at 855-56, we conclude that security guards providing services at a school pursuant to a contract with the school board are included within the definition of "school employee" in Section 30-3-9.

**{18}** Defendant encourages us to strictly construe Section 30-3-9, citing our statement in *Ogden* that "[s]tatutes defining criminal conduct should be strictly construed, and doubts about construction of criminal statutes are resolved in favor of lenity." 118 N.M. at 242, 880 P.2d at 853. Defendant's citation to *Ogden* is incomplete and does not acknowledge our further explanation in *Ogden* of the rule of lenity when construing penal statutes. "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *Id.* A penal statute is not ambiguous "merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government." *Id.* (brackets in original; internal quotation marks and citations omitted). "Rather, lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (internal quotation marks and citation omitted).

**{19}** The rule of lenity is inapplicable in this case. We acknowledge that the term "employee" in certain contexts may be given the narrow reading advanced by Defendant. However, as we have discussed, the ordinary meaning of that term also includes those who are not "employees" in the strictest sense of that term. Furthermore, when considering the objects of Section 30-3-9 and the evils it seeks to overcome, protecting security guards under Section 30-3-9 clearly furthers the purpose of the statute. *See Ogden,* 118 N.M. at 242, 880 P.2d at 853 ("[S]trict construction is only one factor influencing interpretation of punitive legislation, and it should not be used to defeat the policy and purposes of a statute.").

**{20}** Finally, Defendant argues that the principle of *ejusdem generis* dictates that our construction of the term "employee" as used in Section 30-3-9 should be limited by the Legislature's specific reference to board members, administrators, and teachers in Section 30-3-9(A)(2). The principle of *ejusdem generis* literally means "[o]f the same kind or species." *State v. Grayson*, 50 N.M. 147, 154, 172 P.2d 1019, 1023 (1946) (Bickley, J., specially concurring) (internal quotation marks and citation omitted). It provides that "where an enumeration of specific things if followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind." *Id.* (internal quotation marks and citation omitted). Defendant argues that security guards cannot be included in the same group as board members, administrators, and teachers because the listed group "has an internal consistency relating to the traditional function of the school." We disagree. The school board has a duty to provide a safe environment for the education of

6

public school students. That members of the board, administrators, and teachers also have a responsibility to provide a formal education for the students misses the point. Each of these employees, including security guards, by virtue of their working relationship with the board, share in the board's responsibility for making the school a safe environment for student learning. *See* 6.11.2.6. Indeed, security guards, by nature of their employment, bear this responsibility perhaps more than some of the employees specifically listed in Section 30-3-9. Therefore, the principle of *ejusdem generis* does not operate to exclude security guards as "employees" of the board. *See Gooch v. United States*, 297 U.S. 124, 128 (1936) ("The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which follow specific ones to matters similar to those specified; but it may not be used to defeat the obvious purpose of legislation. And, while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view.").

## III.    CONCLUSION

**{21}**    We hold that the contracted security guards providing services for a school are "school employees" within the meaning of Section 30-3-9. We reverse the district court's dismissal of three counts of battery on school personnel, contrary to Section 30-3-9(E), and we also reverse the Court of Appeals. We remand this matter to the district court with instructions to reinstate it on its docket.

**{22}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
 **CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Derrick Johnson*, No. 31,215**

**CL**               **CRIMINAL LAW**
CL-BA          Battery

**CA**               **CRIMINAL PROCEDURE**
CA-DC          Dismissal of Charges
CA-PT          Pretrial Motion

**GV**               **GOVERNMENT**
GV-ES          Education and Schools

**ST**               **STATUTES**
ST-IP          Interpretation
ST-LI          Legislative Intent
ST-RC          Rules of Construction