**Certiorari Granted, January 25, 2010, NO. 32,139**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-012**

**Filing Date: October 29, 2009**

**Docket No. 28,473**

**SAN JUAN AGRICULTURAL WATER**
**USERS ASSOCIATION, ELECTORS**
**CONCERNED ABOUT ANIMAS WATER,**
**and STEVE CONE,**

**Plaintiffs-Appellants,**

**v.**

**KNME-TV, BOARD OF EDUCATION OF**
**THE ALBUQUERQUE PUBLIC SCHOOLS,**
**REGENTS OF THE UNIVERSITY OF NEW**
**MEXICO, JOHN D'ANTONIO, New Mexico**
**State Engineer, OFFICE OF THE NEW MEXICO**
**STATE ENGINEER, NEW MEXICO INTERSTATE**
**STREAM COMMISSION, and OFFICE OF THE**
**GOVERNOR OF NEW MEXICO,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Appellants

Long, Pound & Komer, P.A.
Mark T. Baker
Santa Fe, NM

for Appellees

1

Peifer, Hanson & Mullins, P.A.
Charles R. Peifer
Matthew R. Hoyt
Elizabeth K. Radosevich
Albuquerque, NM

for Amicus Curiae N.M. Foundation for Open Government

**OPINION**

**SUTIN, Judge.**

**{1}** The primary issue in this appeal is whether an undisclosed principal has standing to enforce New Mexico's inspection of public records statute when that principal's agent made the inspection request. As discussed in more detail later in this opinion, we hold that the undisclosed principal does not have standing. Others who also seek to enforce the statute, but who never requested inspection, also lack standing.

**BACKGROUND**

**{2}** A law firm, Victor R. Marshall & Associates, P.C. (the Marshall law firm), through one of its attorneys, Victor R. Marshall, made an inspection request under the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2009), for all records relating to a news documentary program by the name of "The Water Haulers," that aired on KNME-TV in Albuquerque, New Mexico.[1] The request was served on KNME-TV, the Board of Education of Albuquerque Public Schools, the Regents of the University of New Mexico, John D'Antonio as the New Mexico State Engineer, the Office of the State Engineer, the Interstate Stream Commission, and the Office of the Governor of New Mexico (collectively Defendants). Some of the requested records were produced by certain Defendants.

**{3}** Dissatisfied with the responses to the inspection request, the Marshall law firm filed suit on behalf of San Juan Agricultural Water Users Association (the Association), joined by Electors Concerned About Animas Water (Electors) and Steve Cone (collectively Plaintiffs) under the IPRA to enforce the inspection request. It nowhere alleged that

---

[1] Plaintiffs' complaint sets out many allegations that go to the merits of the concerns that Plaintiffs have about Defendants' actions related to "The Water Haulers." Plaintiffs dedicated several pages on this in their brief in chief. In oral argument, Plaintiffs attempted to argue the public importance of the matter to which the records request was related, but conceded that the details and public importance of Plaintiffs' underlying concerns about "The Water Haulers" were not relevant to the issues before this Court.

2

Marshall or the Marshall law firm had ever requested access to records as attorney for or agent of any Plaintiff. Nor does the complaint allege that any Plaintiff requested access to documents. The complaint only gave notice that Marshall or the Marshall law firm had requested documents, Defendants failed to produce documents as requested, and Plaintiffs were entitled to damages. Defendants moved to dismiss under Rule 1-012(B)(1) and (6) NMRA on the ground that none of the Plaintiffs was the "person" in the IPRA that requested the records because the IPRA did not provide Plaintiffs with a cause of action against Defendants. *See* § 14-2-1(A) ("Every person has a right to inspect public records of this state."); § 14-2-8(A) ("Any person wishing to inspect public records may submit an oral or written request to the custodian."); § 14-2-12(A)(2) ("An action to enforce the [IPRA] may be brought by . . . a person whose written request has been denied."). Responding to the motion to dismiss, Marshall submitted an affidavit in which he stated that the Marshall law firm was acting as attorney for the Association when the law firm requested the records.

**{4}** The district court dismissed the action with prejudice. The court dismissed the Association's claim because the Association was not the person that made the requests for records, having failed to disclose itself as the requester, having failed to disclose its name, address, and telephone number at the time the request was made as required under Section 14-2-8. The court dismissed the claims of Electors and Cone because they had not made any request for records.

**{5}** On appeal, Plaintiffs assert that the court erred in four respects. First, by violating case precedent, uniform jury instructions, and statute by refusing to apply the common law of agency in favor of compliance with the IPRA. Second, by ruling that, when requesting the records, the Marshall law firm was required to disclose its principal. Third, by ruling in a manner that is contrary to the express purpose and policies of the IPRA. Fourth, by violating Rule 1-015(A) NMRA by refusing to allow the complaint to be amended to add the Marshall law firm as an additional plaintiff. The New Mexico Foundation for Open Government (NMFOG) filed a brief as Amicus Curiae in support of Plaintiffs. NMFOG's primary concerns are the same as those expressed by Plaintiffs, namely, that requiring the identity of the undisclosed principal can divulge the motives behind the request in violation of the IPRA, and not to apply agency principles, will discourage the press and public from making requests "on behalf of their organizations."

**{6}** We hold that the district court did not err in any regard. Plaintiffs lacked standing to bring the action, and the court did not err in dismissing the action with prejudice. We discuss the first three issues on appeal together under the subject of standing and then turn to the fourth issue, that of amendment.

**DISCUSSION**

**I.      Standard of Review**

**{7}** All issues raised are ones of law involving statutory interpretation and application of law to facts, and we review the issues de novo. *See Sonic Indus. v. State*, 2006-NMSC-038, ¶ 7, 140 N.M. 212, 141 P.3d 1266 (stating that "interpretation of phrases within a

statute is a question of law that is reviewed de novo"); *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 ("[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo." (internal quotation marks and citation omitted)); *Hise v. City of Albuquerque*, 2003-NMCA-015, ¶ 8, 133 N.M. 133, 61 P.3d 842 (filed 2002) (stating that when the issue involves misapplication of law to facts, our review is de novo).

## II.     Standing

**{8}**    The issue at hand is essentially one of the standing aspects of jurisdiction, because the issue the parties address is whether there exists any legal permission or authority for Plaintiffs to sue under the IPRA. *See ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9 n.1, 144 N.M. 471, 188 P.3d 1222 ("When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction.  Standing then becomes a jurisdictional prerequisite to an action." (internal quotation marks and citation omitted)).

**{9}**    Plaintiffs' arguments stem primarily from their view of the purposes and policies of the IPRA and from their views that (1) there is not and should not be any prohibition against an agent acting on behalf of an undisclosed principal at the IPRA request stage, and (2) there is not and should not be any prohibition against an undisclosed principal filing an IPRA enforcement action after records requested by the undisclosed principal's agent are not supplied.  Defendants' arguments to the contrary essentially stem from the language of the IPRA and from federal case law on standing that has developed under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2002) (amended 2007).

## A.     The Language of the IPRA

**{10}**    The request procedure under Section 14-2-8(A) and (C) of the IPRA is triggered when a written request for public records is submitted, and the person seeking to access the records provides its, his, or her name, address, and telephone number.  The enforcement procedure under Section 14-2-12(A)(2) permits an action by "a person whose written request has been denied."  Other than the person whose written request has been denied, only the state's attorney general or the district attorney in the county of jurisdiction is permitted to bring an enforcement action. Section 14-2-12(A)(1). Under Section 14-2-8(C), "[n]o person requesting records shall be required to state the reason for inspecting the records."

**{11}**    The "requester" or the "person requesting" records is given the right to pursue relief under the IPRA.  *See* § 14-2-10 ("The requester may deem the request denied and may pursue the remedies available pursuant to the [IPRA] if the custodian does not permit the records to be inspected in a reasonable period of time."); § 14-2-11(A) (authorizing "[t]he person requesting the public records [to] pursue the remedies provided in the [IPRA]" if the custodian does not timely permit inspection); § 14-2-11(B), (C) (requiring the custodian to provide the requester with a written explanation of the denial of a request, and permitting the requester to seek damages if this is not done). Further, Section 14-2-12(D) permits recovery of "damages, costs and reasonable attorney[] fees to any person whose written request has

been denied and is successful" in an enforcement action.  Plaintiffs present several arguable rationales to support their view that the foregoing language does not preclude an undisclosed principal from suing when its agent's request is unfulfilled.  We set those rationales out.

**B.      Plaintiffs' Various Arguments**

**1.      Plaintiffs' Argument on Agency**

**{12}**    Starting from the undisputed facts that the Association was the Marshall law firm's client and the law firm was acting as the Association's agent, Plaintiffs argue that the common law of agency is the controlling avenue for decision.  Plaintiffs cite numerous authorities for the entrenched proposition that a person can use an agent, including an attorney, for any lawful purpose to act for the principal or client.  Plaintiffs rely particularly on cases holding that a person can use an agent to act under a statute even where the agent is not the person specifically identified in the statute.  *See Turley v. State*, 96 N.M. 579, 581, 633 P.2d 687, 689 (1981) (holding that a statute exempting a landowner from an excavation permit requirement must be interpreted to permit the landowner to use an employee or agent to accomplish the task), *overruled on other grounds by U.S. Brewers Ass'n v. Dir. of N.M. Dep't of Alcoholic Beverage Control*, 100 N.M. 216, 668 P.2d 1093 (1983); *Coldwater Cattle Co. v. Portales Valley Project, Inc.*, 78 N.M. 41, 45, 428 P.2d 15, 19 (1967) (holding that agents of owners of water rights could file and prosecute applications on behalf of owners for a supplemental well).

**{13}**    Plaintiffs argue that the Legislature intended the IPRA to incorporate or accommodate the common law of agency.  Plaintiffs assert that NMSA 1978, Section 38-1-3 (1875) establishes that intent.  Section 38-1-3 provides that "[i]n all the courts in this state the common law as recognized in the United States of America, shall be the rule of practice and decision."  In addition, Plaintiffs claim that "statutes are generally written with the assumption that the statutes will be read in conjunction with the common law, and supplemented and interpreted in accordance with the common law."  Plaintiffs rely on several cases to support this claim.  *See State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205, 174 P.3d 988 (filed 2007) ("The Legislature's continuing silence on the issue . . . is further evidence that it was both aware of and approved of the existing case law which long ago established the appropriate standards of proof."); *Sims v. Sims*, 1996-NMSC-078, ¶ 22, 122 N.M. 618, 930 P.2d 153 ("A statute will be interpreted as supplanting the common law only if there is an explicit indication that the [L]egislature so intended."); *State v. Bryant*, 99 N.M. 149, 150, 655 P.2d 161, 162 (Ct. App. 1982) ("A statute designed to effect a change from that which existed under the common law must be strictly construed; it must speak in clear and unequivocal terms and the presumption is that no change is intended unless the statute is explicit.").  Thus, according to Plaintiffs, common law rules are operative unless the Legislature decides otherwise, and it was unnecessary for the Legislature to "write a treatise on the law of agency into [the] IPRA" in order to assure that the common law of agency would apply to IPRA records requests and enforcement proceedings.

**2.      Plaintiffs' Argument Based on Provisions of the IPRA**

5

**{14}**     Plaintiffs argue that the court's ruling violates Section 14-2-8(C)'s proscription against requiring the person who requests records to state the reason for inspecting the records.  The purpose of this proscription, Plaintiffs argue, is to further the purpose of the IPRA of open access to public records without having to "encounter[] the kind of obstruction and hyper-technical arguments that have been interposed by [Defendants] in this case." Plaintiffs assert that to require a law firm that requests records to identify its client would place an impermissible chill and deterrence on the right of the public to request records, and would be tantamount to forcing a law firm to disclose why it is requesting the records, because to divulge the identity of a client is to divulge the purpose for the inquiry, thus violating the Section 14-2-8(C) proscription.

**{15}**     The main concern of Plaintiffs is that unless anonymous inquiries can be made, the various persons who want to investigate a particular state agency, but who must also deal with that agency, will face intimidation, retaliation, and delay, or can have their lives or businesses otherwise made difficult by the agency once the agency knows who wants the records.  Plaintiffs describe how, in their view, disclosure of the identity of a client can give rise to "arbitrary and unchecked power" over the client, by citing *Herrington v. State ex rel. Office of State Engineer*, 2006-NMSC-014, ¶ 6, 139 N.M. 368, 133 P.3d 258, which involved an agency that failed for eighteen years to set a hearing on an application.

**{16}**     Plaintiffs extend their concerns of intimidation and retaliation to those who are whistle-blowers inside a government agency or have contractual relationships with an agency.  Plaintiffs argue that anonymity is essential for a person, who for good reason, suspects wrongdoing by an employer but is afraid to inquire for fear of retaliation.  Plaintiffs refer, for example, to companies that suspect that a state agency has colluded with a successful bidder.  In addition, Plaintiffs express concerns about agencies that "hobble the news media" in order to unearth public agency wrongdoing, because knowing that a news organization is requesting records "sets off alarm bells."

**{17}**     In addition, Plaintiffs assert that Section 14-2-6(C) in defining "person" to include artificial or unnatural persons such as corporations and partnerships, which can act only through agents, would make no sense if it were not clear that the IPRA "necessarily assumes and relies upon the concepts of agency, even though they are not expressly stated in the statute."

**{18}**     Lastly, Plaintiffs assert that the contact information required by Section 14-2-8(C) has no meaning or purpose other than "to facilitate the production of documents by the public agency."  Thus, Plaintiffs argue, any reliance on that language by the district court or Defendants to support a view that anonymity cannot exist for a records request or even enforcement is misguided.  All the agency needs to know, Plaintiffs contend, is the name and address of the person requesting the records.

**3.      Plaintiffs' Argument on the IPRA Purposes and Policies**

6

**{19}** In support of their position that they are entitled to bring the present action, Plaintiffs argue that the district court's ruling contravenes the explicit statutory purpose of the IPRA, which is contained in Section 14-2-5. Section 14-2-5 states:

> Recognizing that a representative government is dependent upon an informed electorate, the intent of the [L]egislature in enacting the [IPRA] is to ensure, and it is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees. It is the further intent of the [L]egislature, and it is declared to be the public policy of this state, that to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees.

**{20}** Plaintiffs also contend that the court's ruling is contrary to the common law and constitutional law that favor the gathering of information about the government and the dissemination of that information to the public. *See State ex rel. Newsome v. Alarid*, 90 N.M. 790, 796-97, 568 P.2d 1236, 1242-43 (1977) (stating that the public's right to inspection is favored and denial of that right is the exception).

### 4. Plaintiffs' Argument Against Application of FOIA Case Law

**{21}** Defendants rely on FOIA standing-related cases. *See Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1290-91 (D.C. Cir. 1998); *McDonnell v. United States*, 4 F.3d 1227, 1236-39 (3d Cir. 1993); *Mahtesian v. U.S. Office of Pers. Mgmt.*, 388 F. Supp. 2d 1047, 1048 (N.D. Cal. 2005); *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1, 3 (D.D.C. 2005); *Unigard Ins. Co. v. Dep't of Treasury*, 997 F. Supp. 1339, 1342 (S.D. Cal. 1997); *United States v. Trenk*, Civ. Action No. 06-1004 (MLC), 2006 WL 3359725, at *8-9 (mem.) (D.N.J. Nov. 20, 2006), *reconsideration granted on other grounds*, 2007 WL 174327 (mem.) (D.N.J. Jan. 22, 2007). Plaintiffs argue that the FOIA is so substantially different than the IPRA that the cases interpreting the FOIA should not be considered.

**{22}** In particular, Plaintiffs point out that the FOIA does not contain the provision that is in the IPRA that the requester cannot be required to state the reason for the request. In that regard, however, Defendants point out that the FOIA has been construed in a manner that indicates that inquiry into the reasons for an FOIA request is not allowed. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("[A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information."); *Burka*, 142 F.3d at 1290-91 (holding that a party had standing to bring the FOIA suit when his request was denied and that "he was not required to demonstrate that he had any particular need for the information"). In arguing that the FOIA cases are not to be followed, Plaintiffs also point to limitations on federal judicial decision making that circumscribe what those courts can address, including limited Article III jurisdiction and limited federal government powers under our system of federalism. Plaintiffs also argue and cite authority for the view that federal decisions construing a federal

7

statute and making limited use of the common law are not binding on New Mexico courts. Finally, NMFOG cites several state court cases that did not follow FOIA case law.

**C.  The Legislature, Not This Court, Must
Supply Standing to Undisclosed Principals**

**{23}**  This discussion applies solely to the Association, because it was the only Plaintiff that was an undisclosed principal of the Marshall law firm.  There is no issue raised in this case as to whether a person who is acting as an agent for a disclosed principal can obtain records under the IPRA.  Defendants in fact concede that under the IPRA such an agent can request public records.  The only issue before us is whether an undisclosed principal can, as a plaintiff in an enforcement action, enforce a denial of records requested by its agent. Plaintiffs' arguments are plausible, but they do not persuade us to grant the Association standing.

**{24}**  Plaintiffs and NMFOG argue that every citizen has a fundamental right to inspect public records of this state.  *See Alarid*, 90 N.M. at 797, 568 P.2d at 1243.  But we see nothing in the district court's ruling that violates that mandate or the IPRA's policy in Section 14-2-5 that "all persons are entitled to the greatest possible information."  The Association had that right had it made the request.

**{25}**  Plaintiffs assume that state agencies will not or are not prone to act in good faith. This assumption lacks foundation.  Furthermore, the list of hypothetical concerns of Plaintiffs and NMFOG underlying the position that undisclosed principals can sue to enforce the IPRA are not supported in any evidence or cited authority that assists in persuading us that Plaintiffs' rationales should prevail.  Moreover, we see nothing in the IPRA that indicates the Legislature intended the IPRA to permit actions by undisclosed principals because of concerns of intimidation, retaliation, or other tactics of recipients of requests for information, or because Section 14-2-8(C) proscribes any requirement that the requester state the purpose for the request.  That the legislation forbids a public agency to inquire into the purpose for an inspection request does not require the conclusion that the Legislature contemplated or intended that an undisclosed principal could sue to enforce the IPRA when an agent is denied access to records.  In addition, we have trouble reading into the IPRA a common-law-agency concept that requires a conclusion, based on Plaintiffs' concerns, that an undisclosed principal has a right to bring an enforcement action when that undisclosed principal is not, in fact, the "person" who made the written request for inspection of public records and did not supply a name, address, and telephone number.  The IPRA in fact, in its language, indicates an intention to the contrary.

**{26}**  In two sentences in the same subsection of the IPRA, the Legislature first required the written request of the person requesting to inspect records to provide the requester's name, address, and telephone number, and then stated that no person requesting records could be required to state the reason for inspecting the records. Section 14-2-8(C).  It is that same requester who deems the request denied and is entitled to pursue remedies. Section 14-2-10.  It is that same requester who is to be given a written explanation of a request denial

and who is permitted to seek damages if the explanation is not timely given. Section 14-2-11(B), (C). And it is that same requester, whose written request has been denied, who can bring an action to enforce the IPRA and to recover damages, costs, and reasonable attorney fees. Section 14-2-12(A)(2), (D). If the Legislature had intended the requester to be either an undisclosed principal or its agent, the Legislature certainly knew how to articulate the statutory language to accommodate that. *See State ex rel. Citizens for Quality Educ. v. Gallagher*, 102 N.M. 516, 519, 697 P.2d 935, 938 (1985) (noting that, had it intended to do so, the Legislature could have included language prohibiting withdrawal of signatures on a recall petition, but did not do so); *State v. Johnson*, 2008-NMCA-106, ¶ 12, 144 N.M. 629, 190 P.3d 350 (noting that "[t]he Legislature could have chosen to expand the definition of a school employee, but it did not" and that "we will not rewrite or add words to a statute" (internal quotation marks and citation omitted)).

**{27}** Based on the silence in the IPRA relating to specific concerns of chilling, intimidation, and retaliation, and based also on the structure and use of language in the IPRA, it is reasonable to conclude, and we do conclude, that the Legislature anticipated or intended that the person who is permitted to sue has to be the person who made the written request for inspection and who disclosed his, her, or its name, address, and telephone number. It may well be that some public officials concerned with what a records inspection may show will overstep their bounds from time to time by untimely response or denial. However, the Legislature anticipated this because the IPRA expressly provides that requesters can seek relief from certain inaction or denial. *See* §§ 14-2-10, -11 (pursuit of remedies provided in the IPRA); § 14-2-11(C)(2) (damages not to exceed $100 per day); § 14-2-12(B) (writ of mandamus or injunction or other appropriate remedy); § 14-2-12(D) (damages, costs, and reasonable attorney fees).

**{28}** In regard to the FOIA, it concededly is written differently than the IPRA. We note that the standing-related rulings in federal decisions under the FOIA are favorable to Defendants' position in the present case. However, in our view FOIA cases lack the helpful analysis we would like to see for our issue. Nevertheless, those cases disfavor opening enforcement to undisclosed principals and indicate to us that we should exercise caution in judicial interpretation in the circumstances here and leave change or clarification to the Legislature.

**{29}** As for Electors and Cone, even were we to hold in favor of the Association, we would affirm the district court's dismissal of Electors and Cone. Neither the Marshall law firm nor Marshall acted as agent for any of these undisclosed individuals. Further, none of these individuals made a written request for inspection of public records, and the IPRA provides no basis on which they have standing to pursue claims in this action. Plaintiffs nowhere in their oral and written arguments asserted that Electors or Cone had standing or any right to relief in this action. Nor do Plaintiffs argue that the court erred in dismissing Electors' and Cone's claims. We hold the court did not err in dismissing the claims of Electors and Cone.

**{30}** We note that, in oral argument, Plaintiffs' counsel stated that the sole appellant is the Association. The record, however, reflects that Plaintiffs' notice of appeal was filed by all

Plaintiffs as appellants. The title of Plaintiffs' docketing statement refers only to the Association, but the document itself refers to "Plaintiffs," and the appellate briefs also refer to and list in the caption several "Plaintiffs." It is not disputed that, at the time they filed their complaint, Electors and Cone had not requested access to documents, they were not clients of the Marshall law firm at the time of its request, and they had not asked the Marshall law firm to request access on their behalf. Yet, Plaintiffs' complaint alleges that Electors and Cone were deprived of their right to inspect the records and that they were damaged by Defendants' actions and refusal to produce records. The IPRA is quite clear that only the person who requests records can bring an action for damages for a failure to grant access to the records. It appears to us that the joinder of Electors and Cone as Plaintiffs seeking damages in this action lacked any colorable basis. We admonish counsel to be more careful in litigation practice and procedure.

**{31}** In conclusion, we hold that the district court did not err in dismissing Plaintiffs' action. We have no doubt that we should leave the issue in the hands of the legislative process for any desired correction. We leave to the Legislature whether it is necessary to add statutory language to grant further protections against possible chilling, intimidation, and retaliation by specifically allowing undisclosed principals to enforce the IPRA. Plaintiffs are attempting to accomplish through litigation and appellate review that which needs legislative consideration and direction.

**{32}** One last note. We think it is significant that upon being met with a motion to dismiss, and then with an order of dismissal, the Association, already known to be the real party in interest, could have but did not make a request to access records. Furthermore, the Marshall law firm could have sought either to join the lawsuit as a plaintiff or file its own action under Section 14-2-12. It did not do so. Had the Association made a request, by this time it may well have received the records it wanted. Had the Marshall law firm joined or sued, by this time it may well have gotten beyond the jurisdictional hurdle presented in this appeal and may have obtained relief in the district court. Plaintiffs' pursuit of this appeal indicates to us that their primary goal is to test the issues and establish law in the appellate courts through interpretation and application of the IPRA. Plaintiffs of course have every right to take that approach. Nevertheless, one must question the wisdom of choosing litigation over the practical aspect of working out the correct and effective ways of accessing the requested records.

## III. Amendment Issue

**{33}** We agree with Defendants that Plaintiffs cannot complain that they were deprived of a right to amend. There exists only one reference in the record to amending the complaint. It is the following statement by Plaintiffs' counsel in the course of arguing that the district court should deny Defendants' motion to dismiss.

> What happens if scenario wise you grant this motion? What happens is the case doesn't go away. There is just a whole bunch of other maneuvering expense for the taxpayers and the Plaintiff[s], that is, if the [c]ourt were to say that, well, first of all, I don't know, is it me or my firm that supposedly

10

> would have to join the action? I don't know, but let's suppose my firm does, this case is not going to go away if the [c]ourt were to dismiss this action. We would simply amend to add either me or my firm as an additional Plaintiff.
>
> Or let's assume that's a reasonable possibility, I'm not committing to what we might do, but let's suppose that happens, then we get the next set of obstacles, that is, do they try to depose me?

This falls far short of a request to amend. It states nothing more than at some point Plaintiffs may request to amend or may not. We see nothing in the record that constitutes a request of the district court to amend, and we see nothing that placed any duty on the court to grant Plaintiffs leave to amend in the court's dismissal order.

**{34}**     Furthermore, nothing in the record indicates that Plaintiffs requested the court to amend its order to grant leave to file an amended complaint. Not only do we see no duty on the part of the district court under these circumstances to have placed leave to amend language in the order, we hold that Plaintiffs failed to preserve this issue for appeal. *See Chapel v. Nevitt*, 2009-NMCA-017, ¶ 53, 145 N.M. 674, 203 P.3d 889 (stating that "[w]here error is alleged in connection with the entry of a judgment or order, . . . the remedy is by motion to vacate the judgment" and that "issues not raised in the district court cannot be raised for the first time on appeal"); *Muse v. Muse*, 2009-NMCA-003, ¶ 59, 145 N.M. 451, 200 P.3d 104 (filed 2008) ("To the extent that [the h]usband felt deprived of due process by entry of an order without advance notice and an opportunity to object, he should have attacked the entry of the orders at the time and then, on appeal, claimed error.").

**{35}**     Plaintiffs nevertheless contend that they need not move to amend or otherwise seek leave to amend, relying on Rule 1-015(A), which states that leave to amend shall be freely given. They cite authority for the views that pleadings are a means to assist in addressing the merits of cases and that amendments are to cure defective pleadings as well as to add new parties. To further argue that an objection was not required, they cite Rule 12-216(A) NMRA, which states that "formal exceptions are not required" and that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party."

**{36}**     We are not persuaded by these rebuttal arguments. Plaintiffs point to no authority that applies to the circumstances here, that is, where Plaintiffs are undecided whether they will seek to amend and they never advise the district court that they wish to amend either before or after the dismissal order.

**{37}**     Finally, Plaintiffs cite three New Mexico decisions to argue that a plaintiff may amend before a responsive pleading is filed and that an order entered granting a motion to dismiss cannot remove that right. *See Malone v. Swift Fresh Meats Co.*, 91 N.M. 359, 361-62, 574 P.2d 283, 285-86 (1978); *Martinez v. Research Park, Inc.*, 75 N.M. 672, 679-80, 410 P.2d 200, 205 (1965), *overruled on other grounds by Lakeview Invs., Inc. v. Alamogordo Lake Vill., Inc.*, 86 N.M. 151, 520 P.2d 1096 (1974); *Buhler v. Marrujo*, 86 N.M. 399, 402,

11

524 P.2d 1015, 1018 (Ct. App. 1974), *overruled on other grounds by Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982).  The holdings in these cases do not call for a different result in the present case.  Plaintiffs would likely have been entitled to amend under the foregoing cases had they sought leave to do so.

**CONCLUSION**

**{38}**    We affirm.  Under the IPRA, the Association, as the undisclosed principal of the person who made the written request for inspection of public records, lacked standing to sue under Section 14-2-12(A).  Electors and Cone lacked standing because they did not make any written inspection request.  The court did not err in entering a dismissal order with prejudice.

**{39}    IT IS SO ORDERED.**

_____
        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *San Juan Agric. Water Users Assn. v. KNME-TV*, No. 28,473**

| **AE** | **APPEAL AND ERROR** |
| AE-AC | Amicus Curiae |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-AM | Amendments to Pleadings |
| CP-RP | Real Party in Interest |
| CP-SD | Standing |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-AA | Agency, Agent |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-SD | Standing |
| | |
| **GV** | **GOVERNMENT** |
| GV-PR | Public Records |

**ST**     **STATUTES**
ST-IP     Interpretation