CARTER *et al. v.* STATE.

*(Jackson,* April Term, 1944.)

Opinion filed June 10, 1944.

S. HOMER TATUM, of Alamo, and W. N. BEASLEY, of Halls, for plaintiffs in error.

ERNEST F. SMITH, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The three plaintiffs in error, Carter, Forsythe and Turner, were convicted of assault with intent to commit murder in the first degree on the body of Jack Prescott, with a prison sentence of not less than three nor more than five years.

Conceding that an assault was made by two of the defendants, Forsythe and Turner, Carter, who was convicted as an aider and abettor, denies that he participated in the assault. They all insist that there is no evidence to sustain the conviction of an intent to commit murder, that they had no intention of inflicting death upon Prescott, and that such intent is an essential of the crime of which they stand convicted.

Briefly summarized, the record shows that three boys, who seem to have resided near Friendship, in Crockett County, while riding around on the night of the alleged assault, with three young girls, drove through the town of Maury City and, passing near a lumber shed, accosted two colored boys who were standing under this shed, and who were strangers to them, and they testify that one of the negro boys, later identified as defendant Turner, responded with the epithet s— o— b———. The proof is not clear as to just what language the white boys had used, but it is quite evident that it provoked some response. They did not then stop, but after carrying the girls home, they returned to Maury City and drove back to the point where this colloquy had taken place and got out of the car. Thereupon the two colored boys left the shed and moved around to the rear and out of sight and range. The white boys then drove their car down

into the town and picked up the prosecutor, Jack Prescott, and another boy, with the expectation of taking Prescott back out into the country and dropping him at his home. However, they at once reported to Prescott the incident, and while all of the parties were sitting in the car Turner passed along the sidewalk going in the direction which we understand to be toward his home. He was carrying in his hand a beer bottle. Thereupon Prescott, a young man twenty-two years of age, who had recently been discharged from the military service following an attack of pneumonia, but who claims to have practically recovered his health, took upon himself the task of calling the colored boy to account. He says, and his account is verified by the young boys in the car with him, that he borrowed a knife from one of the occupants of the car and, with this knife in his hand, alighted from the car and started after the boy, Turner, up the sidewalk. The testimony seems to indicate that Turner quickened his pace and was followed some steps by Prescott. The weight of the proof is that Prescott had not opened the knife, but we think it a reasonable inference that Turner knew or suspected him of being armed with this weapon. At this stage of the proceedings, Forsythe and Carter, young white men who seem to have lived in the town and knew the colored boy, appeared upon the scene and, stepping between Prescott and Turner, called to Turner to stop, with the remark that Prescott was not going to harm him. Thereupon Turner turned about and faced the parties, Prescott, Forsythe and Carter. The evidence is that about this time, and upon what provocation does not appear, Forsythe struck Prescott with his fist, knocking him over against the building, and about the same time Turner threw at Prescott the beer bottle which he

had been carrying which struck him in the head, and which he testifies staggered him. Prescott thereupon retreated to the car and climbed in and was followed by the three plaintiffs in error, and the evidence is that they pulled him out of the car and proceeded to give him a beating, using their fists and knocking him down, in which position he was kicked once or twice by Turner. He then climbed back into the car, assisted by the plaintiff in error, Carter, who, according to the weight of the testimony, took no part in the physical assault, but was standing by, holding onto the door of the car. His testimony is that he told his companions to desist from their assault upon Prescott, and there is no direct denial of this testimony. We are inclined to the opinion that the preponderance of the evidence is that Carter was not more than a willing witness and did not take any such part in the attack upon Prescott as would justify his conviction, certainly not to such an extent as would justify the inflicting upon him of equal punishment.

It appears from the record that the young man was badly beaten and injured more or less seriously; that he required hospital treatment and medical attention, and there is some evidence that he had not fully recovered from the violence of this attack upon him at the time of the trial. To what extent his previous physical impairment contributed to his condition is not altogether clear.

It should be added that one or two of the witnesses testify that while the attack was being made upon Prescott, one of the assailants exclaimed "Kill him!". It is possible that proof of the making of this statement was treated by the jury as evidence of an intention to take the life of Prescott, but we are not inclined to give great or determinative weight to this exclamation made

in the midst of the fight. He received no assistance from his companions in whose behalf he had thus officiously acted, who appear to have sat in the car and watched the proceedings, without making any effort to defend or assist Prescott. It is hard to believe that if they had con-, ceived at the time that the life of Prescott was in danger, that they would not have done something in his behalf.

██ Conceding that this assault upon Prescott was not justified, despite the fact, as before shown, that his companions, in whose behalf he undertook to act, had been wholly responsible for the beginning of the trouble, and despite the fact that in assuming the role of avenger of this wordy insult he was without legal justification, we are unable to find support in the evidence of the conviction, that the assault, although severe, but without deadly weapons, was made with the intent essential to the offense, that is, to murder Prescott.

As charged by the Court, the governing statute provides that: "Whoever shall feloniously and with malice aforethought assault any person, *with the intent to commit* murder in the first degree, or shall administer or attempt to give any poison or potion for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the penitentiary not less than three nor more than twenty-one years." Code, sec. 10797.

We have italicised language which is an essential to a conviction under this statute and which distinguishes it from the offense of murder proper, that is, where death ensues.

In the course of his opinion, in the case of *Smith* v. *State*, 70 Tenn., 614, at page 617, Chief Judge DEADERICK uses this language:

"The offense charged is not the actual commission of the crime, which might include different degrees or other offenses, but is a charge of an assault with a single intent to commit a specific offense. It is the intent with which the assault is committed that constitutes the offense. The intent only gives the assault its felonious character. The intent forms the gist of the offense, and where the intent constitutes the offense it must be proved. 1 Whar. Cr. Law, sec. 1279; *Jones* v. *State*, 2 Swan, 399. And if the prisoner's real intent were not the same which the indictment specifies, he must be acquitted. 1 Bish. Cr. Law, sec. 666."

We have here a case of a physical assault, without the use of deadly weapons, the use of which raises a presumption of an intent to slay. While we do not go so far as to hold that an assault might be made without weapons in such form and manner as to show an intent to commit murder, we are not persuaded that the facts here proven, a fair summary of which has been given, show such an intent. All of these young white men had been previously acquainted and their relations had been friendly, and there is no evidence of any previous difficulty or misunderstanding, or any showing of malice. Nor do we find here evidence of premeditation and deliberation. We have reached the conclusion that these two white boys who took the part of this negro felt that he was being persecuted by some boys from another neighborhood or town, and we cannot escape the conclusion that they knew at the time that he was armed with a knife. Prescott does not explain why he borrowed the knife and took it with him. It could have been for no other purpose than to use it in case it became necessary. The testimony is in the record in narrative form, and we have no doubt

that much more was said between the parties in the course of this affray than is disclosed in the transcript.

We find it necessary to reverse this case for the reasons indicated, and remand it for a new trial on the charge of assault, with such punishment upon conviction as the trial court may inflict. Reversed and remanded.