172 P.2d 1019

**STATE v. GRAYSON et al.**

No. 4937.

Supreme Court of New Mexico.

Sept. 28, 1946.

Fletcher A. Catron, of Santa Fe, for appellants.

C. C. McCulloh, Atty. Gen., and Thomas C. McCarty, Asst. Atty. Gen., for appellee.

HUDSPETH, Justice.

The defendants were convicted of the crime of attempt to commit murder and from the judgment and sentence entered upon the verdict, appeal.

The evidence of the state shows that the defendants registered at a hotel in the

City of Santa Fe about 8 p.m., and were assigned Room 304, to which they were conducted by Pedro Gonzales, the prosecuting witness, an employee of the hotel.

Later that night Gonzales saw a woman in Room 304 with the defendant, Grayson, but denied that he procured her for him. The following afternoon Gonzales was enticed by defendants into Room 304.

After Gonzales and defendants entered the room the door was locked by one of the defendants. They offered Gonzales a drink of liquor, and asked him the name of the woman who had been in the room with Grayson, stating that she had stolen some money. Gonzales declared and maintained throughout the "third degree" ordeal that he did not know the name of the woman—only knew her by sight. Defendants had two bottles of liquor, part of which they consumed in the presence of Gonzales, threatened to strike him with a bottle, and repeatedly threatened to kill him. They struck him with their fists, and Gonzales testified as to the further assaults, as follows:

"A. And I was very bloody after I had been beaten, and they told me to wash.

"Q. Do you remember who told you that, Pete? A. I don't know, but they told me. I couldn't see because my eye was swollen. They told me to wash, I washed, and I was cleaning my face with a towel when I finished cleaning they again attacked me, one side, I don't recall which side, and then they got me dizzy and they put me across the wall, and then they told me to call the girl through the telephone, that the telephone was there. I didn't say anything, but I thought of calling help for me. I went to the telephone with my hands all bloody, and I put them there, and I called downstairs to the desk, and no one answered. I was excited, but I said these words: 'Come up to the 304 right away,' and then they grabbed me here from behind, I don't know who, and they put me back where I was, and they again attacked me. Before that they said this: 'This son of a bitch called downstairs for help.' and then they attacked me again. Two or three times they put me on top of the beds, there was two double beds, they would put me there and they would put me here, they would cover me with sheets or quilts, and hit me on the head. I don't know when they did cut me here, I didn't feel it, I didn't feel it until I went to the hospital. * * * 'After that I don't remember because I was very dizzy and I could not see. I screamed very loud when they had me against the bed and covered, they pulled me by the hair and others would strike me on the back, I don't know who they were' ".

Gonzales was confined to the hospital for ten days as a result of his injuries. The doctors testified that he had suffered the loss of two teeth, two complete fractures of the lower jaw, fracture of two

ribs, the loss of about one-third of the right ear and numerous cuts and bruises.

When the State rested the defendants also rested and moved for an instructed verdict. The motion follows:

"Mr. Catron: At this time, if the Court please, the defendants move that the jury be instructed to bring in a verdict of not guilty for the following reasons:

"The defendants are charged here under Section 41-611 of the New Mexico Statutes, 1941 Annotated, with the crime of attempting to commit the crime of murder on the prosecuting witness, Pedro Gonzales. The State has failed to show that these defendants had the specific intent to murder Pedro Gonzales; the State has failed to show by any evidence that the means employed, or the acts done by the defendants, insofar as Pedro Gonzales is concerned, were apparently reasonably adapted to the accomplishment of the end, which is charged that is, the murder of Pedro Gonzales, or that those acts were done under circumstances making the murder of Pedro Gonzales apparently possible. This being an alleged attempt to commit the crime of murder, it was incumbent upon the State to establish by the evidence, beyond a reasonable doubt, that the acts done by the defendant were done with malice aforethought, and either with deliberation and premeditation, and the intent to commit murder or with premeditation and with the intent to commit murder, those being the necessary ingredients of the crimes of murder in the first degree and murder in the second degree, and it is only with murder and attempt to commit murder that we are here concerned.

"For the further reason that even should the Court believe that there is any evidence here from which the jury might believe, beyond a reasonable doubt, that there was an intent on the part of the defendants to commit murder, and in that event, the defendants would have to be discharged because an assault having been shown it would then be assault with intent to murder, and under this Statute, they cannot be convicted of the crime of assault with intent to murder because of the language itself which reads:

"'If any person shall attempt to commit the crime of murder by poisoning, drowning or strangling another person, or by any means not constituting an assault with intent to murder, such offender shall be punished by imprisonment, etc.' The District Attorney is proceeding on the theory that that language is to be construed as eliminating intent. On the contrary, all authorities hold that a specific intent to murder must be established, in order to convict of the crime of attempt to murder. As a result, we have this situation, either there is no intent shown, and we therefore lack an essential element of the crime which is

charged here, and the defendants must be discharged, acquitted, or if we have an intent shown, they must be discharged because they are entitled (indicted) or informed against under the wrong law."

The motion was overruled. Defendants excepted, and assigned the action of the Court as error. Their contention was presented by requested instruction No. 6, which the Court refused, and again by motion to set aside the verdict.

The Court embodied in his instructions to the jury, without objection from the State, defendants' requested Instruction No. 1, as follows: "The Court instructs the jury that the defendants are charged under Section 41-611, New Mexico Statutes, 1941 Annotated, with the crime of attempting to commit the crime of murder upon one Pedro Gonzales. In order to justify a verdict of guilty of the crime so charged, the facts and circumstances shown by the evidence in this case must convince you beyond a reasonable doubt that the defendants attempted to murder said Pedro Gonzales by poisoning, drowning, or strangling him, or by any means, not constituting an assault with intent to murder."

Mr. Justice Bickley briefly discussed 1941 Comp. Secs. 41-611 and 41-606 in State v. Martin, 32 N.M. 48, 250 P. 842. Secs. 15 and 16, Chapter 265, Anno.Laws of Mass., enacted more than 140 years ago, are similar; and statutes similar to or identical with 1941 Comp. Secs. 41-606 and 41-611 and other sections of Chapter 3 of the Act of N.M. Defining Crimes and Punishments, Laws 1853–1854, appear in the Revised Statutes of Wis. of the year 1849; and the Supreme Court of that state in Jambor v. State, 75 Wis. 664, 44 N.W. 963, 966, commented on the section under consideration here, from which we quote: "It is very true the defendant is prosecuted for an attempt to murder M. M. Secor by means not constituting an assault with intent to murder. Actual assault or violence is not an ingredient of the crime. If physical force were used, it might amount to an assault with intent to murder, and be a different crime. * * * It is said that this tends to prove another crime, viz., an assault with intent to murder, which is not the offense charged in the information. But we cannot conceive of what offense comes under section 4374, unless the one charged does; for the statute has expressly provided for an assault with intent to kill, and then provides for the offense of attempting to murder by poisoning, drowning, or strangling, or by other means not constituting an assault with intent to murder. So there must be a distinction between the two offenses. An assault implies some unlawful physical force, partly or fully put in motion. It includes violence. But we are considering the attempt to commit murder by means not constituting an assault."

■ "Every battery includes an assault, because the greater includes the lesser." 6 C.J.S. Assault and Battery, § 1, p. 797.

■ The word "attempt" is more comprehensive than the word "intent" implying both the purpose and the actual effort to carry that purpose into execution. Smith v. State, 126 Ga. 544, 55 S.E. 475. The specific intent to murder is the gist of the crime. It raises it from misdemeanor to felony and the error based upon the denial by the trial court of defendant's request that the jury be instructed on the question of intent is well taken. State v. Shedoudy, 45 N.M. 516, 118 P.2d 280; State v. Louther, 22 Wash.2d 497, 156 P.2d 672; Norwood v. State, 182 Miss. 898, 183 So. 523; Daniels v. State, 196 Miss. 328, 17 So.2d 793; Carter et al. v. State, 181 Tenn. 259, 181 S.W.2d 137; Davis v. State, 206 Ark. 726, 177 S.W.2d 190; 22 C.J.S., Criminal Law, §§ 32, 75; 40 C.J.S., Homicide, Sec. 79, p. 942.

■ While the information did not charge a crime under Sec. 41-611, because it shows that a crime was committed by an assault, and it was not an attempt to commit the crime of murder by poisoning, drowning, or strangling, which may be accomplished by assault; yet the defendants are guilty of a cowardly and brutal assault upon Pedro Gonzales, for which they richly deserve punishment, and we assume that the District Attorney will desire to further prosecute the case.

The judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded with instruction to the District Court to set aside his judgment and to grant a new trial, and proceed not inconsistent herewith. It is so ordered.

BRICE and LUJAN, JJ., concur.

BICKLEY, Justice (concurring specially).

I am unable to fully concur in the opinion of Mr. Justice Hudspeth. It is therein stated that the information did not charge a crime under Sec. 41-611, "because it shows that a crime was committed by an assault, and it was not an attempt to commit the crime of murder by poisoning, drowning or strangling, *which may be accomplished by assault.*" (Emphasis mine.)

I agree that the crime of attempting to commit the crime of murder under Sec. 41-611 may be accomplished by an assault. To this extent we all repudiate the contention of appellant and the apparent holding of the Wisconsin court in Jambor v. State quoted from in the main opinion, and there is no reasoning supplied in lieu thereof.

Since it is conceded that an assault may be an ingredient of the crime defined in

Sec. 41-611 it becomes important to scrutinize the language of the said section to ascertain whether it was the legislative intent to limit its scope to attempts to commit the crime of murder "by poisoning, drowning, or strangling."

It is familiar law of statutory construction that effect shall be given to all of the words and phrases of a statute.

Sec. 41-606 (Assault with intent to murder) and Sec. 41-611 (Attempt to Commit Murder) were originally enacted as Secs. 26 and 27 of Ch. III of act 28 of the Laws of 1853–1854 as follows:

"Assault. Sec. 26. If any person shall assault another, with intent to murder, or to maim or to disfigure, or injure his person, in any of the ways mentioned in the next preceding section, shall be punished by imprisonment in the county jail or Territorial prison not more than five years, nor less than one year, or by fine not exceeding one thousand dollars nor less than fifty dollars.

"Assault, &c. Sec. 27. If any person shall attempt to commit the crime of murder, by poisoning, drowning, or strangling another person, or by any means, not constituting an assault with intent to murder, such offender shall be punished by imprisonment in the county jail or Territorial prison, not more than ten years, nor less than one year."

The marginal notes indicate that either the Legislature or the editor preparing the matter for publication recognized that assault might be an ingredient of both offenses. Such seems to be the holding in the main opinion.

I cannot but think that the difference in punishment was arranged because the Legislature viewed with greater abhorrence the means employed such as poisoning, drowning or strangling and that the lawmakers believed that the employment of such means was attended with an irrebuttable presumption that a person attempting to commit murder by such means was acting with a deliberate and premeditated design indicating a depraved mind, which might not necessarily or invariably attend assaults with intent to murder by less obnoxious means and as more lightly punishable under Sec. 26.

The idea is not novel. There are certain "horror murders", included in first-degree murders. For instance: "All murder which shall be perpetrated by means of poisoning or lying in wait, (or) torture," are defined as first-degree murder. Sec. 41-2404.

If these means are employed deliberation and premeditation are conclusively presumed.

I think by Sec. 27, the Legislature had in mind to impose the severer penalty upon

"horror attempts to murder," and that such attempts by poisoning, drowning or strangling were meant to be illustrative and did not exhaust the class since they said that any person attempting to commit the crime of murder "by any means not constituting an assault with intent to murder" must be punished as therein provided. Since the main opinion does not eliminate assault as an ingredient of the crime of attempting to commit the crime of murder by poisoning, drowning or strangling, it is apparent that such attempt to commit murder would be punishable under the provisions of Sec. 27 notwithstanding that the proved facts might also constitute assault with intent to murder under Sec. 26, except for the fact of the legislative declaration to the contrary. In other words, the same evidence might establish both the offense of "assault with intent to murder" and the offense of "attempt to murder," but the offense would fall within and be punishable under the provisions of Sec. 27 if committed by the means described therein, simply because the Legislature has said that it falls within and shall be punishable as provided in that section and not as provided in Sec. 26. Sec. 27 immediately after employing the phrase "by poisoning, drowning or strangling another person" goes on to say: "or by any means, not constituting an assault with intent to murder." It is to be noted that this language does not necessarily exclude assault from the means employed, but only excludes means constituting an assault with intent to murder. An assault with intent to murder otherwise falling under Sec. 26, if the assault be by means described in Sec. 27, would be punishable under Sec. 27 and *ergo* an assault with intent to murder by any of the means described in Sec. 27 would be an attempt to murder and not an assault with intent to murder as contemplated by Sec. 26.

It may be well to call attention to the fact that in 40 C.J.S., Homicide, Sec. 68, discussing attempts, it is said: "*Distinguished from assault with intent to murder.* It has been stated that there is very little substantial difference between an assault with intent to murder and an attempt to murder."

This being so and the main opinion having conceded that an offender may be proceeded against under Sec. 27 notwithstanding that an assault is involved, the only significance I can discover in the words "or by any means, not constituting an assault with intent to murder" is to characterize the means thus referred to as being of the same kind as those theretofore specifically mentioned in the section, namely, by poisoning, drowning or strangling.

Since we are all agreed that whether there has been an assault or not is not a

determining ingredient of the offense under Sec. 27 (41-611), what significance must be given to the phrase, "or by any means, not constituting an assault with intent to murder"?

I think the answer to this question is to be found in the employment of the maxim of statutory construction known as *ejusdem generis*. To refresh our recollection, this maxim means according to 28 C.J.S., Ejusdem, 1049: "Literally 'Of the same kind or species.' A well-known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of a statute or other written instrument, the doctrine being that, where an enumeration of specific things if followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind. * * *"

If it be inquired what means unspecified would be considered as the same kind as those specifically enumerated, I would venture to look to our first-degree murder statute above cited and conclude that an attempt to commit the crime of murder by lying in wait or torture would be of the same kind and that any of the various kinds of torture could be assimilated to the class of horror attempts to murder specifically enumerated. Also, while there might be a technical distinction between strangling and smothering, I think an attempt to commit the crime of murder by smothering would be a good illustration of means of the same kind as strangling, specifically mentioned in Sec. 27. An attempt to murder by smothering another person would doubtless also come within the purview of torture.

If the means employed satisfies the rule of ejusdem generis then there would be no greater reason to eliminate assault as an ingredient of accomplishment of attempt to murder by such means than if the attempt were made by poisoning, drowning, or strangling.

It is arguable that there is in this case evidence sufficient to show that the defendants attempted to murder Pedro Gonzales by means of lying in wait, torture and smothering and that they could be proceeded against under Sec. 27 (41-611).

However, the views presented in this opinion, if correct, were not adequately presented in the information nor in the instructions and for this reason I do not resist the decision in the main opinion to remand the case for further proceedings.

This opinion should not be closed without stating, that for the purpose of ascertaining the meaning of the act and the intent of the 1853 Legislature, I have disregarded the 1921 amendment increasing the penalty for the offense described in Sec. 26 (originally regarded as the lesser) and leaving unchanged the punishment for commission of the graver crime described in

Sec. 27. I think this circumstance proves nothing except inattention on the part of the draftsman and does not aid us in any way in construing the language employed in Sec. 27.

SADLER, C. J., concurs.