This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36578

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID J. DAVILA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant David Davila appeals his convictions of aggravated driving under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016), and reckless driving, contrary to NMSA 1978, Section 66-8-113 (1987). Defendant raises five issues: (1) the district court abused its discretion in granting a continuance to allow the State time to find the arresting officer who did not appear at trial; (2) the district court abused its discretion in denying Defendant's subsequent

motion for a continuance to locate his key witness; (3) because Section 66-8-102 does not include *beer* in the definition of *liquor*, there was insufficient evidence to convict Defendant; and, if *beer* is subsumed within the term *liquor*, the statute is unconstitutionally vague; (4) there was ineffective assistance of counsel; and (5) the restitution statute does not allow for *cumulative* fines and fees. We affirm.

## BACKGROUND

**{2}** The State initiated proceedings against Defendant by criminal information in July 2016, charging Defendant with one count each of aggravated DWI, reckless driving, and failure to carry evidence of insurance. At the trial in April 2017, the State called Officer Kevin Hall of the Carlsbad Police Department as its sole witness; Defendant testified on his own behalf. Officer Hall's testimony can be summarized as follows.

**{3}** Just after midnight on May 13, 2016, Officer Hall observed Defendant's vehicle travelling "at a high rate of speed." Although Officer Hall had some difficulty catching up with Defendant's truck, he eventually was able to pull Defendant over. The subsequent interaction between Officer Hall and Defendant was recorded on video and admitted without objection.

**{4}** Officer Hall approached the truck and asked Defendant for his driver's license, registration, and proof of insurance. During the encounter, Officer Hall had reason to believe that Defendant was intoxicated, including that Defendant had "heavy, slurred speech" and red, "glossy" eyes. Defendant first claimed he had only consumed one or two drinks and later admitted that he had three to four beers at around 11:00 p.m. Officer Hall asked Defendant to step out of the vehicle in order to perform field sobriety tests. As he stepped out of the vehicle, Defendant stumbled backwards and swayed back and forth while standing. Despite asking Defendant multiple times if he would consent to field sobriety tests, Defendant refused on the basis that he had knee problems and was a diabetic. Officer Hall told Defendant that they "keep all of that stuff into consideration" but Defendant continued to refuse to perform the tests. Officer Hall ultimately arrested Defendant for DWI and reckless driving and cited Defendant for failing to provide proof of insurance.

**{5}** The district court set a pretrial conference for December 12, 2016, and scheduled trial to commence on December 20, 2016. On December 12, 2016, both the State and Defendant informed the district court they were ready to go to trial. However, right before the start of trial on December 20, 2016, the State informed the district court that it was not ready to proceed because it could not locate its key (and only) witness, Officer Hall, who had been subpoenaed. The State made several unsuccessful attempts to contact Officer Hall and his supervisors but was unable to locate Officer Hall or obtain an explanation for his absence. Defendant orally moved for a dismissal with prejudice for failure to prosecute. The State identified the various individuals who placed phone calls to the officer's cell phone and stated that an individual even went to the officer's apartment complex but was unable to find him there. The district court dismissed the jury but declined to rule on the motion at that time. Some weeks later, the court ordered

Officer Hall to appear and show cause why he should not be held in contempt of court, reset the pretrial conference for February 13, 2017, and reset trial for February 28, 2017.

**{6}** At the hearing on the order to show cause, Officer Hall admitted to being personally served with the subpoena and failing to comply with it. The district court found Officer Hall in contempt of court and ordered him "to reimburse the State of New Mexico for costs associated with calling in the jury seated to hear the case for which he failed to appear." At the subsequent pretrial conference, the district court heard argument on Defendant's motion to dismiss for Officer Hall's failure to appear. The court found that Officer Hall's absence was not the fault of the State, observed that it had fined Officer Hall in excess of five hundred dollars for his failure to appear, and denied the motion. The State then orally moved for a continuance, due to a scheduling conflict, and Defendant concurred. The district court reset the pretrial conference for March 6, 2017, and the trial for March 14, 2017.[1] On February 15, 2017, Defendant filed an amended witness list, which for the first time included Mrs. Roselyn Hernandez as a potential witness.

**{7}** On March 6, 2017, both the State and Defendant orally moved to continue, as they still needed to conduct witness interviews. The district court reset the pretrial conference to March 27, 2017, and set trial to commence on April 4, 2017. On March 24, 2017, the State filed another motion to continue on the basis that Officer Hall was going to be out of town and unavailable for the trial. Defendant took no position on the motion but reasserted his right to a speedy trial. The district court granted the motion and reset the pretrial conference for April 17, 2017, and the trial to commence on a trailing docket for April 25, 2017.

**{8}** Defendant then filed a motion to continue the pretrial conference and trial to a "more convenient time," as defense counsel had a scheduling conflict for April 25, 2017. The district court reset the trial for April 26, 2017, but later the same day—and after entry of the court's order—Defendant filed a second motion to continue to a "more convenient time," because defense counsel's scheduling conflict was for both April 25 and 26, 2017. On April 25, 2017, the district court reset the trial for April 27, 2017.

**{9}** Prior to the start of trial, Defendant orally moved to dismiss the case

> on speedy trial grounds because [Defendant's] witness, Mrs. Roselyn Hernandez, [was] subpoenaed . . . for the April 4th trial which was continued . . . [Defense counsel has] attempted to contact and subpoena her . . . but she no longer works at her employment; she no longer lives at the house of her last address. So, she is no longer available to the defense. And we have been prejudiced by that.

---

[1]Hereinafter, "the State's Continuance" will refer to the district court's resetting of the trial due to Officer Hall's failure to appear at the December 20, 2016 hearing, including the State's motion for a continuance on February 13, 2017, after the district court denied Defendant's motion to dismiss for Officer Hall's failure to appear.

Defendant further informed the district court that "as soon as this case was rescheduled originally for [April 25, 2017], and then continued for [April 26, 2017], and then for today, [April 27, 2017, he] immediately started looking for her" and was "not able to find her within the last week." Defense counsel did not explain why he failed to notify the court about the issue at an earlier time, or how Mrs. Hernandez's absence was prejudicial to his case, particularly since he had not listed her as a potential witness prior to February 15, 2017. The district court denied the motion, citing defense counsel's failure to inform it that the witness was unavailable, in spite of the numerous motions to continue filed between March 28, 2017 (the date of continuance to the April 25, 2017 trailing docket) and April 27, 2017 (the date of trial). The case then proceeded to a jury trial. Defendant was convicted of aggravated DWI for refusing chemical testing as well as reckless driving. The district court dismissed the no proof of insurance charge for lack of evidence.

**{10}** Less than two weeks later, Defendant filed a motion for a new trial, arguing (1) that the district court abused its discretion in granting the State a continuance on January 13, 2017, after Officer Hall failed to appear; (2) that the court abused its discretion when it denied Defendant's motion for a continuance on the day of trial; and (3) ineffective assistance of counsel. Defense counsel attached an affidavit in support of the motion in which he asserted for the first time that Mrs. Hernandez would have testified that "she was present with [D]efendant during the evening, and observed his sobriety, up until minutes before his arrest." The affidavit also stated that "[d]uring the two days available"—meaning April 26th and 27th—defense counsel attempted to locate and subpoena Mrs. Hernandez but was unable to do so. However, presumably at some point between the end of trial on April 27, 2017, and the filing of the motion on May 12, 2017, she had "since been located, she is an employee of the State of New Mexico and resides in Carlsbad, New Mexico." At the motion hearing on June 19, 2017, counsel admitted that he did not subpoena Mrs. Hernandez for any trial date. The district court ultimately denied the motion for various reasons, including that Defendant had been given ample time to locate and notify Mrs. Hernandez, and that it was "highly questionable that her purported testimony would have had any impact upon the outcome of his trial."

**{11}** Defendant was sentenced to eighteen months of imprisonment for aggravated DWI,[2] with three months suspended, one year of parole and five years of probation. He was sentenced to ninety days of imprisonment for reckless driving to be served concurrently with his DWI term. Additionally, Defendant was fined a total of $2,000 and assessed $235 in fees, including a crime victim reparation fee of $75 for aggravated DWI and $50 for reckless driving. This appeal followed.

**DISCUSSION**

**Motions to Continue**

---

2Defendant's aggravated DWI conviction was enhanced to a fourth degree felony based on proof of his three prior DWI convictions. *See* § 66-8-102(G).

**{12}** Defendant argues that the district court abused its discretion by (1) "sua sponte" granting the State a continuance after Officer Hall failed to appear for trial on December 20, 2016, and (2) by denying Defendant's motion to continue when his key witness failed to appear on April 27, 2017. "The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted). Our Supreme Court has directed district courts to consider several factors in evaluating a motion for continuance, including "the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing the need for a delay, and the prejudice to the movant in denying the motion." *Id.* Where a continuance is requested for the purpose of obtaining witness testimony, "these factors serve to balance a criminal defendant's constitutional right to compulsory process, U.S. Const. amends. VI, XIV, with the court's interest in controlling its docket and the public's interest in the efficient administration of justice without unnecessary delay." *Torres*, 1999-NMSC-010, ¶ 10.

**{13}** Defendant first argues that the district court's "sua sponte declaration of a continuance" following Officer Hall's failure to appear at trial was an abuse of discretion and, alternatively, that the district court abused its discretion by failing to consider the *Torres* factors. We disagree. As an initial matter, Defendant cites no authority for the proposition that a "sua sponte declaration of a continuance" is an abuse of discretion, nor do we find any. We do not review undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (holding that appellate courts are under no obligation to "review unclear or undeveloped arguments"). In any event, the district court's decision was not a "sua sponte declaration" as Defendant argues. When Officer Hall failed to appear on December 20, 2016, Defendant orally moved for dismissal for failure to prosecute. The district court, after inquiring and considering what efforts were made to locate the officer, declined to rule on the motion at that time, subsequently entered an order to show cause and reset the pretrial conference and trial date. The district court took testimony from Officer Hall during the show cause hearing and, at the pretrial conference on February 13, 2017, heard argument on the motion to dismiss. The court ultimately found that Officer Hall's absence was not the fault of the State, denied the motion, and set the case for trial. The district court properly heard from the parties and considered Officer Hall's testimony and the fine it had imposed on Officer Hall before deciding that dismissal was inappropriate and that the trial date should be rescheduled.

**{14}** With respect to the district court's alleged failure to consider the *Torres* factors, Defendant points to no authority for the assertion that the factors are mandatory considerations. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (noting that "appellate courts will not consider an issue" if no supportive authority is cited, and that, "given no cited authority, we assume no such authority exists"). Regardless, with respect to the legitimacy of the requested delay, Officer Hall was the State's only

witness, and therefore his failure to appear was a legitimate reason for the State to seek a continuance. With respect to the fault of the movant and the likelihood that the delay would accomplish the movant's objectives, the State's subpoena and Officer Hall's testimony at the show cause hearing demonstrated that the State was not at fault, and the court ensured that Officer Hall would be present at the rescheduled trial date. Defendant's motion to dismiss did not demonstrate that prejudice would result from a continuance. Indeed, Defendant apparently benefited from the continuance, as he was given the opportunity for further investigation, which resulted in his identifying and naming Mrs. Hernandez as a witness. Accordingly, even if the district court did not explicitly consider each of these factors, it is clear that the substance of the factors weighed in favor of a continuance, rather than dismissal. *See Torres*, 1999-NMSC-010, ¶ 10. The district court therefore did not abuse its discretion.

**{15}** Nor did the district court abuse its discretion by denying Defendant's motion to continue trial due to Mrs. Hernandez's failure to appear on April 27, 2017. Defendant argues that the district court improperly denied his motion because the court had granted the State a continuance on similar grounds, and because the court again failed to consider the *Torres* factors. Defendant fails to cite any authority requiring a district court to grant a continuance where a previous one was granted under similar or analogous circumstances, and we assume that no such authority exists, *see Vigil-Giron*, 2014-NMCA-069, ¶ 60, and we see no unfairness or arbitrariness in the district court's decision here. When Defendant moved for a continuance, he made no proffer of the testimony he anticipated from Mrs. Hernandez, nor did he state with particularity how he would be prejudiced by proceeding to trial without her in attendance. Defendant also informed the court that Mrs. Hernandez had been subpoenaed for April 4, 2017, but when that date was continued, Defendant could not locate Ms. Hernandez to subpoena her for the new trial date. Despite this, in the numerous motions filed with the district court after April 4, 2017, defense counsel never mentioned that Mrs. Hernandez could not be served or contacted. Defense counsel later admitted that Mrs. Hernandez had in fact *never* been subpoenaed, and that his attempts to contact her had only begun on April 25, 2017—two days prior to trial. Accordingly, the record indicated that defense counsel was substantially at fault for failing to secure Mrs. Hernandez as a witness for trial. Moreover, given defense counsel's representation that Mrs. Hernandez had relocated and changed employment, it appeared unlikely that a delay would accomplish the objective of timely securing her appearance at trial. The district court also explicitly noted the various continuances that had already been granted for both parties, resulting in a delay of over four months even prior to Defendant's motion on April 27, 2017. Therefore, we again conclude that the district court effectively considered the *Torres* factors, and did not abuse its discretion by denying Defendant's motion and allowing the trial to proceed.

**The Implied Consent Act**

**{16}** Defendant argues that the evidence was insufficient to support his conviction under Section 66-8-102(D)(3). Specifically, he argues that "[i]nsufficient evidence—or to be precise, *no* evidence—was presented even to indicate [Defendant] had consumed

*liquor* that night, as opposed to *beer*." We understand this to mean that, under Section 66-8-102(D)(3), which criminalizes driving under the influence of *liquor*, *beer* is not included in the definition of *liquor*, and since the only evidence at trial concerned Defendant's consumption of beer, the State failed to prove its case. We are not persuaded by Defendant's argument. We review issues of statutory construction de novo. *State v. Johnson*, 2009-NMSC-049, ¶ 9, 147 N.M. 177, 218 P.3d 863. "The principal command of statutory construction is that the court should determine and effectuate the intent of the [L]egislature using the plain language of the statute as the primary indicator of legislative intent[.]" *State v. Ogden*, 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845 (citation omitted). When not defined by the statute, words "should be given their ordinary meaning absent clear and express legislative intention to the contrary." *Id.* Where statutory language is unclear, ambiguous, or reasonably subject to multiple interpretations, we proceed to further analysis, taking into consideration a statute's history, background, and overall structure, as well as the statute's function within a comprehensive legislative scheme. *State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183. Additionally, "[i]f the plain meaning of the statute is doubtful, ambiguous, or if an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, [a reviewing court] will construe the statute according to its obvious spirit or reason." *State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369 (alteration, internal quotation marks, and citation omitted).

**{17}**    Section 66-8-102 (D)(3) provides: "Aggravated driving under the influence of an intoxicating liquor or drugs consists of . . . refusing to submit to chemical testing, as provided for in the Implied Consent Act [NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019)], and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." Defendant correctly states that *liquor* is not statutorily defined. Absent a statutory definition, we turn to their ordinary meaning, absent a clear directive otherwise.

**{18}**    Defendant asserts that *liquor* is defined as "a distilled or spirituous beverage, as brandy or whiskey, as distinguished from a fermented beverage, such as wine or beer"; "[a]ny alcoholic drink, esp. spirits, or such drinks collectively"; or "an alcoholic beverage made by distillation rather than by fermentation[,]" citing *Liquor*, Dictionary.com, https://www.dictionary.com/browse/liquor (first definition and definition provided by British dictionary) (last visited March 23, 2020). The State asserts that *liquor* is a generic term that encompasses alcoholic beverages, such as beer, citing Wikipedia. *C.f. Liquor*, Wikipedia, https://en.wikipedia.org/wiki/Liquor (introductory paragraph) (last visited March 23, 2020) ("[I]n North America, the term *hard liquor* is used to distinguish distilled alcoholic drinks from non-distilled ones."). However, the statute provides a modifier, which both parties have ignored. The statute refers to "intoxicating liquor," which Black's Law Dictionary defines as either:

> 1. An ardent, spirituous, distilled, or vinous liquid or compound containing a minimum statutory percentage of alcohol and consumed as a beverage[; or] 2. Any distilled or fermented alcoholic beverage containing a minimum

statutory percentage of alcohol and capable of causing drunkenness when consumed in sufficient quantities.

*Intoxicating liquor*, Black's Law Dictionary (11th ed. 2019). Additionally, Black's Law Dictionary states that *liquor*, as a standalone term, is too broad to have a specific legal meaning; rather, it is "commonly understood as including all varieties of intoxicating beverages, whether spirituous, vinous, or malt." *Id.* (internal quotation marks and citation omitted). As there are multiple available definitions, we turn to the legislative intent of the statute to provide guidance as to which definition was intended.

**{19}** Importantly, our Supreme Court has held that the "chief purpose behind the Implied Consent Act is to get drunk drivers off the road." *In re Suazo*, 1994-NMSC-070, ¶ 10, 117 N.M. 785, 877 P.2d 1088. Indeed, we have held that Section 66-8-102(A) of the Implied Consent Act, which contains identical language establishing the illegality of driving "under the influence of intoxicating liquor, . . . gives notice, according to the plain meaning of the word 'influence,' that the Legislature intends to criminalize a condition less than intoxication, but 'influenced' to any degree *by alcohol*, no matter how slight." *State v. Neal*, 2008-NMCA-008, ¶ 26, 143 N.M 341, 176 P.3d 330 (emphasis added); *id.* ¶ 27 (explaining that this language reflects the Legislature's concern "with the effect or influence of . . . *alcohol* on [a] defendant's ability to drive" (emphasis added)). The Legislature's intention to criminalize driving under the influence of alcohol supports a definition of "intoxicating liquor" that embraces any alcoholic substance capable of causing intoxication. Other sections of the Implied Consent Act support this interpretation as well. Section 66-8-102 contains various instances where the term *alcohol* is used in place of *intoxicating liquor or drugs*, including that the State may prove a person is under the influence of an *intoxicating liquor* by proving "an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle." Section 66-8-102(C)(1). The statute also provides that, upon conviction, "an offender shall be required to obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender[.]" Section 66-8-102(O). An ignition interlock device is defined as a device, "that prevents the operation of a motor vehicle by an intoxicated or impaired person." NMSA 1978, § 66-5-502(B) (2013). Clearly, such a device would not discriminate between a person intoxicated by a distilled beverage, versus a person intoxicated by a fermented beverage.

**{20}** In sum, we hold that the Black's Law Dictionary definition of *intoxicating liquor* is supported by both the purpose of the DWI statute to prevent drunk driving, and a commonsense reading of the statute. *Beer* is included in the term *intoxicating liquor*, and the State provided sufficient evidence of Defendant's consumption of beer through Defendant's admissions and Officer Hall's observations of impairment.

**{21}** Defendant also argues the statute is unconstitutionally vague as applied to him because "liquor" is undefined by the statute. A statute is unconstitutionally vague if, among other things, "it fails to provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited[.]"

*State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685. Defendant's argument on this point is a single paragraph, in which he provides no authority to support the premise that a statute is unconstitutionally vague when it fails to provide a definition of a commonly used word; nor does Defendant explain how a person of ordinary intelligence would be unable to determine whether their conduct was prohibited under the statute. Therefore, we decline to review the argument. *See Guerra*, 2012-NMSC-014, ¶ 21.

**Ineffective Assistance of Counsel**

**{22}**    Defendant next argues that he received ineffective assistance of counsel based on defense counsel's failure to secure Mrs. Hernandez as a witness. We review ineffective assistance of counsel claims de novo. *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. A prima facie case of ineffective assistance of counsel requires Defendant to demonstrate that "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* Deficient performance is established when defense counsel's "representation fell below an objective standard of reasonableness." *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (internal quotation marks and citation omitted). We review counsel's performance in a "highly deferential" manner and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). We will not second guess the trial tactics and strategies of counsel in reviewing a claim of ineffective assistance of counsel. *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127. To satisfy the prejudice prong, a defendant must prove that there is a reasonable probability that the outcome of the proceeding would have been different but for the errors of counsel. *State v. Hernandez*, 1993-NMSC-007, ¶ 28, 115 N.M. 6, 846 P.2d 312 (internal quotation marks and citation omitted).

**{23}**    Defendant argues that "[b]efore jury selection, counsel 'alerted the court that he had been unable to secure a [m]aterial [w]itness and that he was unable to effectively represent his client.' " However, at trial, defense counsel informed the court that his witness was not present "and [they had] been prejudiced by that." Defense counsel did not explain the prejudice nor allege that he could not effectively represent his client without Mrs. Hernandez's testimony. Nevertheless, Defendant argues on appeal that defense counsel "alleged his own incompetence with facts necessary to evaluate the claim" and that those facts are sufficient to establish a prima facie case of ineffective assistance. Defendant fails to cite any case law whatsoever in support of these contentions. Defendant also fails to explain how the absence of testimony from Mrs. Hernandez was prejudicial. To the extent that Defendant argues that her testimony would have furnished proof of his sobriety, Defendant's mere assertion is insufficient to establish a prima facie case of ineffective assistance of counsel. *See State v. Jim*, 2014-NMCA-089, ¶ 31, 332 P.3d 870 (holding that the defendant failed to establish a prima facie case of ineffective assistance where he failed to provide support for his

assertion that defense counsel's conduct fell below the reasonable care standard). Additionally, on the record before us, we cannot conclude that there was no rational or plausible strategy or tactic to explain counsel's conduct. Finally, we have already determined that there was sufficient evidence to support Defendant's conviction, including Defendant's own admissions concerning his alcohol consumption just prior to his arrest. Defendant has not shown a reasonable probability that the outcome of the trial would have been different had counsel successfully secured Mrs. Hernandez's testimony. Accordingly, Defendant has failed to establish a prima facie case of ineffective assistance as to this claim on direct appeal. This conclusion "in no way impairs Defendant's ability to later bring such a claim in a habeas proceeding." *Bahney*, 2012-NMCA-039, ¶ 53.

**Restitution**

**{24}**　Defendant argues that "since restitution is inherently punishment, a trial court is not authorized to cumulate the crime victims reparation fees when the sentences are ordered to run concurrently." We understand this to mean that, because restitution is a form of punishment, it is necessarily part of the sentence, and a sentence can only run concurrently or consecutively, not cumulatively—ergo, restitution cannot be cumulated. Despite the apparent application of this argument to fees, generally, Defendant only challenges the cumulation of the crime victims' reparation fees in his case. Defendant again fails to provide any relevant legal authority to support the assertion that the district court does not have the authority to "cumulate the crime victims reparation fees when the sentences are ordered to run concurrently." In fact, Defendant admits that he has no legal authority in support of his argument. Where no legal authority is given, we assume no such authority exists, and do not consider the issue. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60.

**{25}**　We nevertheless note that, while New Mexico does not define *sentence*, *concurrent sentence*, or *consecutive sentence*, the commonly accepted definitions of these terms do not support Defendant's argument. The term *sentence* is defined by Black's Law Dictionary as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty[.]" *Sentence*, Black's Law Dictionary (11th ed. 2019). Black's defines a "concurrent sentence" as "two or more sentences of jail time to be served simultaneously[,]" and a "consecutive sentence" as "two or more sentences of jail time to be served in sequence." *Id.* Thus, while *sentence* encompasses every aspect of the judgment entered by the district court following a conviction, the modifying terms of *consecutive* or *concurrent* only apply to any jail time imposed by that sentence. Additionally, our criminal procedural statute establishing the crime victims reparation fee, NMSA 1978, § 31-12-13(A) (2015), provides that "a district court . . . *shall* assess and collect from a person convicted of a misdemeanor or felony offense a mandatory crime victims reparation fee." (Emphasis added.) This provision apparently requires the district court to assess a fee in connection with each offense for which a defendant is convicted, regardless of whether the jail terms for such sentences run consecutively or concurrently. Therefore, it was within the district court's authority to sentence Defendant

to concurrent sentences of detention for his convictions and to impose separate fines and fees for each conviction.

**CONCLUSION**

**{26}** We affirm.

**{27} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**BRIANA H. ZAMORA, Judge**